Good morning and welcome. Thank you so much for being here. I would like to thank all of our Pioneer Courthouse colleagues for being such wonderful hosts. And today we have submitted a number of matters on the briefs and record. And those cases are United States v. Pranzetti, United States v. Dibbie, McKay v. Bloodworth. And in the afternoon calendar, Fetcather v. Progressive Northwestern Insurance Company. So that leaves two cases remaining for argument. The first one is United States v. and is the last name pronounced Graybael or Graybell? How is the last name pronounced? Graybell. Okay, thank you. Is that correct? All right. Well, then, if you can come forward, please. Good morning, Your Honors, and may it please the Court. Kurt Hermanson on behalf of Mr. Graybael. Because 404B evidence carries with it the inherent potential to see a defendant found guilty for who he is rather than what he did, courts must take the appropriate care to see that that does not happen. And in considering the 404B analysis, this Court has said that 403 is an automatic part of that analysis. In this case, the victim had not testified yet when the expert testified. So the expert testified first and set the table of propensity evidence of pattern that defined the trial. The Supreme Court has said that the judge is not a mere moderator, but the governor of the trial for purposes of making sure that the trial is fair. In this case, the district court should have identified the 404B purpose and found whether it was material based on whether it was at issue. So in order to determine materiality, one must look at what is at issue in the trial. And the materiality that was found was nothing that was at issue in trial. This Court on Bonk and Curtin said we hold that as a matter of law, that a court does not properly exercise its balancing discretion under 403 when it fails to place on the scales. You would agree that the expert testimony would have been relevant to either Mr. Grable or the person that Mr. Grable says was the actual perpetrator, Jackson, the brother, correct? Wouldn't that mitigate any prejudice, the fact that it would be applicable to either? There is some level of, to the extent it's relevant, the probative value is greatly outweighed by the undue prejudice. In this case, there was no battered woman syndrome diagnosis. There was simply an expert who started off and the district court allowed the expert to testify without narrowly circumscribing the expert's testimony, without hearing the victim. But haven't we and many other courts allowed expert testimony on domestic violence to assist jurors in understanding a victim's testimony, the dynamics of domestic violence and that relationship? Absolutely, but those cases, they're factually different and distinct from this case. So in this case, what we didn't have was a victim who recanted. And so instead, what was allowed is calling the expert first, assuming that the victim either isn't going to testify or is going to recant. And although district courts can't control, can't dictate the order in which witnesses are called, I just got off a two-week trial in D.C. where Judge Moss told me, you want your expert to say that your client has memory problems. I'm not going to allow that unless your client testifies. I'm going to narrowly circumscribe what that expert can testify to unless you call your client first. I can't make you do that. You don't have to call your client, but I'm just telling you, there is going to be a heavy thumb on the scale limiting what this expert can say. But she did testify that, you know, she was blaming herself for starting the fight with Graybill. She hit him first. She didn't want to go to the police. She wanted to reschedule the meeting with the police. She didn't feel comfortable talking with them. She didn't want to meet with them at all. Yes, all of that is true, and I think that makes her more credible because she got on the stand, and she testified, and she said, Graybill is the one who hit me. The reason that that isn't super prejudicial, overwhelming evidence is in December, and the key event here is December. In December, her brother, Keith Jackson, hit her repeatedly in the face with a baseball bat, and he had assaulted her previously, and she recanted that. In December, when she told the police, my brother's the one who did it. My brother's the one who hit me with the baseball bat. And then on further questioning, she said, well, what about, Officer Medina said, what about Graybill? I said, well, Graybill hit me too, but Keith Jackson is the one who's hitting me in the face. Keith Jackson, the person who I live with, is the one who caused all of this damage. And the police said, well, we're going to take him back home. You called 911 and said it was Mr. Graybill, correct? She did call 911 and said it was Mr. Graybill in May. So what I'm getting at is that... Isn't May the charged assault? Right. So why is it not relevant that on the day of the charged assault, she called 911 saying it was Mr. Graybill? It is relevant. Was it consistent with that when the police arrived? Right. So the whole trial came down to who did it. Was it Mr. Graybill or Mr. Jackson? And what I'm saying is that either is plausible because the reason she identified Mr. Graybill is she had previously identified Keith Jackson, and the police did not protect her. And she lived with Keith Jackson, not with Mr. Graybill. So her relationship with Mr. Graybill is not a domestic violence, your typical battered woman syndrome domestic violence situation where she can't get away. This is a person who doesn't work, who doesn't drive, who's addicted to alcohol and drugs, and who lives with her grandmother and with her other family members, including Keith Jackson. When the police returned him to that house and returned her to that house, it only makes sense that she wouldn't identify him. And one of the government's witnesses, her cousin, works for the tribal police, the tribal prosecutor. So the whole family, they're all cousins, they're all related. It's not a safe environment for her to point the finger at her brother. And I think Your Honor points to something very important. The 911 call, her statements, the government could have presented strong evidence and focused on May 16th, the charge defense. Instead, they chose to call the expert first and then bookend the case with a number of propensity witnesses to talk about the prior events. So the prior events became a trial within a trial, and that violated 403. And this Court's review is de novo because the district court never engaged in a 403 analysis. And a 403 analysis has to be informed by what the issues are at trial. And because the expert just got free reign in testifying without knowing how the victim would testify, and because then the end of the trial was all about propensity, the jurors were left easily confused. And what do you think is your stronger argument, the expert testimony of the domestic violence expert being excluded or the prior acts? Which one is stronger? You seem to be focusing on the expert testimony, is that right? Well, the Court's questions were there, so I wanted to respond to the Court's questions. I think the 404B analysis is stronger, but I see them dovetailing into each other and supporting each other because of the way the table was set. The table was set by the expert and the propensity and the pattern. But if the defense contested whether she had suffered substantial bodily injury, and that requires analysis of the severity of her pain, then why is it not a relevant comparison if she told the nurse after the charged assault that this was the worst pain she could ever imagine, 10 out of 10, to know what else has she suffered that she said this particular assault was the worst pain ever? It feels like the door was opened. If you're going to challenge whether this individual suffered sufficient pain, then that pain comparison evidence seems relevant. Is that not right? So I think that gets both to the prejudicial pictures that came in of the prior, which would confuse the jury because the horrific pictures are from the prior offenses, which would confuse the jury with the picture of... But what about just the prior incidences themselves? So the prior incidences are the fact that she suffered cracked ribs that were cracked again, or that were already injured and then she suffered more injuries, is relevant to her pain assessment. Her 10 out of 10 is relevant to her pain assessment. That evidence came in. The medical evidence came in of her pain. Her family's testimony about how hard it was for her to get into the car, how she was sleeping. There was lots of evidence about her pain level. That was... But what happened instead was... And the government had that evidence. They didn't need to then put in these graphic pictures of the priors. And it's very confusing who actually caused the prior injuries. The prior injuries were in both incidences, in December and in March. Certainly in December it was Keith Jackson. In March, who did at least the vast majority of what happened, in March there was a complaint and the police went out because of a fight with her brother. So we don't even know from the evidence who caused those injuries, and that shouldn't be the question. Instead, the jurors were left to... But wouldn't it still be... You were challenging at trial that this person did not suffer extreme physical pain. And so she could not... The government could not meet the elements of serious bodily injury. So I guess you're conceding that the fact that she may have had these injuries before as a comparative severity of pain analysis is okay or fair, seems relevant, right? You're just saying the photos were overly prejudicial? That and all of this speculative trial within a trial about who caused the prior injuries. Because the jurors were left with the impression that it was Mr. Grable when it was her brother. And what's important for a pain assessment is she said it was 10 out of a 10. She made excited utterances about how much it hurt. There was medical evidence about how much it hurt, and she had family members testify about how much it hurt. Your Honor, may I please reserve the rest of my time? Please. Do you have a question, though? And we'll give you enough time for rebuttal. But there's a... If your defense strategy or one of your primary theories was that her brother caused the injury and you had tried to introduce evidence that the brother had committed the December attack, would that not have opened the door to evidence about it being your client who did that? Yes. Or had assaulted her before as well? So that's a great point, and that's a counterfactual, right? So unlike a lot of the cases where the government relies on where the defense put on a vigorous and currently described it as an aggressive defense, that can open the door under 405 not to the specific acts, but to character or propensity for violence. So, yes, if that counterfactual had happened and he was a potential witness, he was on the witness list, but he was not called. So that would have been a different situation. You mean Jackson was not called? Correct. Keith Jackson was on the defense witness list but was not called. So that could have happened but didn't. Well, I guess because, I mean, it is counterfactual and I'm trying to understand because at the time that the motion was being argued, I think you represented to the court that your defense would be to challenge the identity of the attacker, that you weren't going to, I think you were saying that the intent was not at issue and there was a representation that the defense would focus on the identity of the attacker and the severity of the injury. There was no direct evidence of who did it. And so it came down to, you know, was she afraid to identify her brother and instead was left with identifying her boyfriend, or as the government's theory was, no, she told the truth when she called 911. And the jury wasn't given the opportunity to focus on the facts of May 16th and instead were lured by the 404B to not like Mr. Grable because he had hit her in the face before and to convict him based on that. But the court gave limiting jury instructions that you couldn't consider it for propensity purposes and the prosecution seemed very careful in opening and closing to sort of reiterate that instruction. And juries are presumed to follow instructions. So how should we deal with that? So jurors are presumed to follow instructions. But here it was clear, we don't even need clear, but I think the error was clear that the basis for giving in the 404B first intent, that should be a nonstarter because according to the government's own brief, he punched her, kicked her, pulled her to the ground, punched her in the abdomen, hit her and slammed her head to the ground. So if Mr. Grable is the person who did that, intent is not an issue. Okay. What if we agree with you that the district court got it wrong on intent, but wouldn't it be allowed for a reaction to physical assault? There's a lot of case law, Berkman, Sinigini, that such testimony is allowed to show and explain a reaction that seems counterintuitive to physical assault. So I think it's, I don't know if we're getting into expert realm here, but I think it's well within jurors' knowledge that, and again, I'll repeat, I think it's more credible, and we didn't need the expert saying that testimony, that she identified Mr. Grable because she was afraid of her brother. As far as her reaction, so first of all, the court gave a limiting instruction. It didn't say reaction. It said the court's limiting instruction said state of mind or intent. So that's what the jury was left with. The court's instruction said accident or mistake, and the court's instruction said assessing credibility, which might be what the court's pointing to. So is she credible when she identifies Mr. Grable? So that's, but nothing the expert said and nothing about the prior incidents go to her credibility. And absence of mistake, again, he kicked her and punched her in the abdomen and had her head slammed to the ground a couple of times. That's not like the other cases where maybe he was trying to scare the person or had a different intent. And as far as her credibility, there was no battered woman syndrome diagnosis. There was no issue about her going back to Grable. She didn't live with Grable. And most importantly, she did not recant. All right, thank you. You've gone over your 15 minutes by a minute and 10 seconds, but I'll give you a minute for rebuttal, and then, of course, you can answer any of my colleagues' questions. Thank you. May it please the Court, Suzanne Miles for the United States. At this trial, the defense drew two battle lines for the jury. One, that the victim was lying when she said that it was Marion Grable who hit her on May 16th. And second, that she misrepresented the severity of her injuries. Those were the two questions that the jury had to assess, and both of them required them to look very carefully at the victim's credibility. How does the identity of the attacker for the prior assaults have any relationship to the severity of her injuries? I mean, I understand why saying she experienced a severe injury in the past is relevant. I understand why past evidence of past injury is relevant, but why was the identity of the assailant at all admissible under that theory? So the different theories acted in some ways independently of one another. So for the pain assessment theory, showing the pictures of the injuries and describing what her prior injuries were was the relevant piece of those. Who gave her those injuries really wasn't relevant to that. So all of the testimony about it being Mr. Grable who committed those injuries is not admissible for the purpose of showing injury? Not for the purpose of her saying this was extreme physical pain, no. That was admissible for other purposes. Okay, so what purpose is your contention that it's actually admissible for? It's admissible for the credibility of her identification of Grable as her assailant for May 16th. Basically, I'm sorry, Your Honor, if you have a question. I mean, it's a very fuzzy line between bolstering her credibility because of the rationale that he has a propensity to attack, right? How do you actually separate that? I think it's easily separated when you look at Berkman and some of the other cases involving domestic violence victims. So really what the jury had to figure out is, was it believable for this woman to come forward and say, this man hit me, beat me, punched me 10 times, slammed my head into the ground, kicked me in the ribs, caused extreme physical pain, and I still love him. And I want to go back to him. And he's a kind, caring man. And all of the other things that she said about him that indicated that she still felt devoted to him. That's the lack of concert that this Court has noted over and over again when it comes to domestic violence cases. And that goes to the heart of her credibility. How can those two things be true at the same time? And that became more important. Multiple attacks to make that point then. I mean, you could have had, I mean, presumably maybe the first time anyone ever experiences that, there's that question. You had your expert say, you know, that is not unusual. Why would you need the prior bad acts to make that point? It went to the cycle of violence, which is what the expert instructed the jury about, that this can be something that happens repeatedly and that victims still go back to their assailants at different times. And ultimately, that's a question of weighing, which the district court carefully did. The defense says that the court didn't engage in a 403 analysis. That's simply not true. At page 453 of the record, you can see that the district court balanced the probative value and the multiple different uses of the prior act evidence against the prejudicial effect, which is exactly what Your Honor is looking at. And it's that determination that this court reviews for an abuse of discretion. I'm having a great deal of difficulty understanding your argument on credibility. The question here is, who assaulted her? She testified, both on a 9-11 and at the trial, that it was Grable. Why did she have to bring in the prior cases to establish her credibility as to what she said on 9-11 and what she said on the stand, other than to paint Grable as a serial assaulter and, therefore, a classical propensity testimony, if he did it before, he did it now? To me, it's clear error. Well, Your Honor, I'd like to answer that, if I can, in two different ways. First, I think that the evidence that you're pointing to supports our harmless error analysis, that the jury did hear the consistency. That's a different issue. But don't tell me about credibility. I mean, do tell me about credibility. I would like to tell you about credibility, if I may, Your Honor. I do think that credibility, if we look at Berkman, if we look at Lewis, if we look at the other cases that involve this, what 404B says is that you can use this evidence for anything other than propensity. The jury was specifically instructed that it couldn't be used for propensity. Walk me through the rational basis that talking about this man as assaulting her before makes her more credible on the stand as to her testimony that he assaulted her on this occasion? I think we need to put it in context of what the defense was arguing, too. So what the jury was trying to figure out, as the defense had posited it to them, was who hit her on May 16th, right? Was it the brother? Jackson. Right. Who had also hit her before, or was it Grable? And so when looking at that, there's a couple of factors that come in. The problem with that, sorry to interrupt. That's okay. I understand, but we're trying to deal with a situation at the time that the judge admitted this evidence that was not necessarily how the trial was going to go, and there's a fair argument. The only reason why the trial went that way is because the judge allowed you to focus on the prior bad acts to begin with. I disagree with that in terms of that this was a defense that was churned up because of the pretrial rulings. I think there was no doubt that this woman had been beaten on May 16th. Her injuries were significant, and so it was always going to be a question of who did it. I don't think that that was because of the 404B, and that the two people in her lives, or in her life, who had beaten her were her brother and the defendant. So I think it was always going to be the defense. Well, I understand a situation in which if, you know, if at trial the defense had attempted to say it wasn't Grable, it was her brother, and you know it was her brother because her brother attacked her before, I think that would have opened the door wide open then to this evidence of prior bad acts for the identity issue. But the problem I'm facing is that at the time that the judge made this decision, that hadn't happened yet. Nobody knew that was going to happen, and instead all the prior bad act evidence came in first. At what point did the defense put you on notice, the government on notice, that it would be basically contesting identity? During the pretrial litigation, they said that identity was going to be the core of their defense. So it wasn't something you learned first at trial? It wasn't. Although I will say that right out of the gate, in opening statement, what the defense said is that this woman lives in a household that is filled with violence, that her brother beats her, and that he beat her this time, and she was looking for a way of covering for him. So immediately in opening statement, we knew exactly what the argument was going to be. And if you look at the government's opening statement before that, we walked a very tight line in terms of referencing the prior bad act evidence. You can see that at page 267. What we said specifically to the jury is you are going to hear about some other acts. You may not use them. The court is going to tell you that you cannot use those to say that the defendant is a bad guy, he must have done this bad thing. We are asking you to consider that evidence because we want you to look at the context in which the victim lives and how her testimony is going to come out. Because the government was on notice that this was going to be an identity defense, wasn't it a mistake then for the district court to admit this for a purpose of intent, lack of accident, or mistake? Those seem like the wrong purposes. Wouldn't you agree if identity is the issue? So I don't think so, and I think it goes back to trying to answer Judge Bea's question and Judge Sung's questions, which I'd be happy. I want to give a little bit more context. Maybe yes, but I think no. And the answer is, because what the jury was trying to figure out is who hit her on May 16th, right? The question became, who was the most plausible person to have done this? So if the evidence came in that the brother had beat her before and he was violent towards her and the other option was the defendant and there was no context to their relationship, there was no indication that this was a contentious relationship, that there had been any violence whatsoever, then the jury would have been left with half the story. And what Old Chief tells us is that we don't have to, the government doesn't have to present. In order to be fair, we don't have to present the jury with a completely pared-down version of facts that leaves them with untenable gaps that they need to then try to fill in. And so what the jury would have had then was no context about the contentiousness of this relationship, a lot of information about her brother as a domestic violence abuser, and they would have been asked to... But that still doesn't explain why this is relevant for lack of accident or mistake or for intent. None of those are at issue. So what it comes down to, I think, for those is that this wasn't... When she took the stand and said, this was my fault, this... He didn't mean to do this. This was... Things just got out of hand. We were both drinking. All of that was part of the fabric of this case as well. And so while I think that intent and lack of accident are the least probative of all of the value that came out of this, I don't think it was negligible. I think just like in Berkman, and just like, actually, more like Lewis, which is that Fourth Circuit case, where the Fourth Circuit said the fact that this defendant has made racially inappropriate comments to the victim before gives the jury context for what that relationship is and allows them to see that the defendant would have the state of mind even in a general intent assault crime. But this general intent crime doesn't require you to prove intent, right? Well, it doesn't require us to prove that he had the intent to injure. But it does require that we show that he meant to do what he did and that he knowingly hit her and that doing so was wrong. Laura and... It wasn't that issue. They're not challenging. They're just saying it wasn't him. Well, but in essence, that's true. What they were saying is it wasn't him. You shouldn't believe it was him because in part of that, she loves him. She wants to go back to him. She thinks he's an incredibly kind man. We have that minimizing that came in. And so understanding his state of mind, the contentiousness of their relationship, that the fabric of their relationship included violence, provided background narrative information that gave the jury a more complete picture of what was going on in this relationship and made it more probable than not, which is the relevance standard. It doesn't have to be convincing. It doesn't have to be the only evidence. It needs to be more probable than not. It seems to me that if the question is who did it, the fact that the defendant is a kind and loving man doesn't go to the he didn't do it. Is that... So I see it slightly differently, Your Honor. I think if you were in a relationship with, let's just say, with your brother, and the two of you have never had an argument in your life, you've never had crosswords, you've never once seen anything except for eye-to-eye, and then he accuses you of hitting him, then somebody trying to decide whether that's a credible accusation against you, given the context of your relationship, is going to judge that differently than if they know that you've had an ongoing battle for your entire life. It just provides different context for the credibility of her saying, this man hit me, when what the defense was trying to say is that she was covering up for her brother, and so it would be also a credible thing for the jury to look at her evidence, look at her testimony, and say, she wants to cover up for her brother. This man has never actually done anything. So she's accusing him because she's facing family pressure to do it, which is entirely what the defense was saying. She's lying. And so when she takes the stand and tries to walk back that accusation, to pull back on it, to try to still, you know, limit how much she is saying about this defendant, that makes it more important to understand the context of their relationship, the cycle of violence, what happened between the two of them, and why she may be walking back her accusations against him and minimizing for a reason other than the fact that he didn't do it, which is what the defense was trying to convince the jury of. So for 404B evidence for identity, you have to show similarity between the prior acts and the charged offense. So what are the similarities here, either in terms of the method of the assault, the injury, circumstances leading up? What is there that is sort of a signature that would connect these different acts? Well, I'll say first of all that the defense didn't challenge similarity, and so it wasn't something that the district court concentrated on. Did they have to? The district court admitted it for intent and lack of mistake and accident. That's true, not for modus operandi, but it's true, and similarity is one of the components. And the similar aspects here are that all three of these arguments, or all three of these injuries, were done in basically an argument between the two of them. Most of the time alcohol was involved, or at least I think all three times alcohol was involved. He hit her in the face. We didn't ask the jury, though, to look for a signature in terms of his method of beating. You're arguing identity only as an alternative ground on appeal. That's right. I mean, the other aspects of why this information was relevant is certainly stronger. But at the end of the day... And are you saying it's stronger because of the high standard for similarity required to show identity? Um... I guess what I'm saying is that this wasn't used as an M.O. So this information wasn't being used to show that he had a signature and that this fit that particular signature. This was a pretty run-of-the-mill, although very significant, beating. Your Honors, I've gone over time. I'm happy to answer any other questions, but otherwise... Let me see if my colleagues have any more questions. No, I have no questions. Okay, thank you. So I have a number of points. First on Breckman, that was a specific intent case. The government relies heavily on Breckman. There, the husband was... had to show... The government had to show that he wasn't joking, he wasn't trying to frighten her. It was a specific... There were two counts. They were both specific intent. The government says that E.R. 453 shows that there was a 403 balancing test. Counsel, would you please address why this isn't harmless error? This isn't harmless error because... because as the Supreme Court has said and as this Court has said, propensity evidence... The judge has the role of making sure that someone is found guilty based on what they did regarding the May incident, not based on who they are. And here, because the case started and ended with these bookends of propensity, propensity, propensity. And I'll show you two. We have these pictures that came in. So the picture of May...  doesn't show vast, horrible injuries. The pictures from... from March, very confusing for the jury. This is very, very prejudicial for them to see these pictures, possibly get concerned, you know, like, oh, well, did he cause those? The government said that only Mr. Jackson and only Mr. Grable hit her in the face, and that's not true. There's evidence that a large woman hit her in the face, and that she engages in mutual combat. I don't think it's accurate to say that she was minimizing when she said that she hit him first. The aunt also said that they were... that it was mutual, that they were fighting. Doesn't excuse anything. People should walk away, not engage in that activity. So three people beat her, not two. Identity is not in the... as the court is aware, identity was not in the limiting instruction. Identity... So bringing it for the first time on appeal is not appropriate. And the aunt corroborated that there was... that the victim also hit Mr. Grable. So, and I don't view her testimony as her walking back anything or minimizing anything. I mean, she expressed her true feelings about Mr. Grable. She pointed the finger at him. We've stated the reasons why we think she did that. This was a case of whodunit. And there are two plausible scenarios that should have been cleanly presented to the jury of was it Mr. Keith Jackson? And it would have been a completely different trial if the propensity stuff hadn't come in. The defense could have put on Mr. Jackson or could have put on evidence and then it would have been a different trial about like, you know, who did it? So the defense... this isn't an aggressive defense that came on. This is the government deciding we're going to set the table with the expert and we're going to close this out with propensity, propensity, propensity. And that's why harmless errors should not be found here. And the government has to show that it's more likely than not that it didn't affect the verdict. So it's the government's burden to show if the court finds 404B error, it's the government's burden to show that it wasn't harmful. And if the court finds, as it did in Curtin, that it's a due process violation, then it would be Chapman and the government would have to prove beyond a reasonable doubt that there is an error. But at a minimum, the government has the burden of showing that the 404B evidence that came in and should have been excluded under 403 didn't affect the outcome. If there's no further questions, I thank the court. Any further questions? No, okay. Thank you very much. Thank you, Your Honor. And thank you to both counsel for very helpful arguments today. Thank you.
judges: BEA, KOH, SUNG